IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM P. TROLINGER | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. WMN-06-1551 |
| WILLIAM HENRY, Chief United States Probation Officer, et al. | : | |
| | : | |
| Defendants. | | |

## **MEMORANDUM**

Before the court is a pro se civil rights complaint filed by William P. Trolinger challenging the constitutionality of 42 U.S.C. §14135a which requires him, as a convicted felon, to provide a blood sample for DNA[1] analysis. Plaintiff, a convicted felon on supervised release, claims the statute violates his rights under the Fourth and Fifth Amendments. Additionally, he contends that application of the statute violates the *Ex Post Facto* clause.

Counsel for Defendants William Henry, Chief United States Probation Officer and David Wonneman, United States Probation and Pretrial Services Offices, has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Trolinger has filed an opposition. No hearing is needed to resolve the facts and issues presented in this case. See Local Rule 105.6. Upon careful review of the pleadings and applicable law, the court will grant Defendants' Motion to Dismiss.

---

[1]   Deoxyribonucleic acid.

**I. Background**

    **A. Statutory History**

The DNA Analysis Backlog Elimination Act of 2000 [2] ("DNA Act"), codified at 42 U.S.C. § 14135a, requires a convicted felon on supervised release who "is, or has been, convicted of a qualifying federal offense" to provide a blood sample for inclusion into a database maintained by the Federal Bureau of Investigation ("FBI"). See 42 U.S.C. § 14135a.[3] The sample is sent for laboratory analysis and entered into the Combined DNA Index System ("CODIS").[4] See 42 U.S.C. §§ 14135a(c)(2), 14132(a); 14135a(b).[5]

The United States Probation Office is statutorily authorized to collect DNA samples of individuals on release, parole, or probation who have been convicted of a felony. See 42 U.S.C. § 14135a (a)(2), (d). With the passage of the 2000 DNA Act, Congress also amended the supervised release statute to required court to "order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized" by the DNA Act. See 18 U.S.C. § 3583(d).

---

    [2]    2000 DNA Act § 3, Pub. L. No. 106-546, 114 Stat. 2726 (2000).

    [3]    An individual subject to the DNA Act who fails to cooperate in the collection of the DNA sample is guilty of a class A misdemeanor. See 42 U.S.C. § 14135a.

    [4]    CODIS is an indexing system created by the FBI under the authority of the Violent Crime Control and Law Enforcement Act of 1994.

    [5]    Use of the information obtained from the DNA test is strictly limited to purposes specified in the Crime Control Act. See 42 U.S.C. § 14135e (b). The Crime Control Act limits disclosure of test results to criminal justice agencies for law enforcement identification purposes, use in judicial proceedings, and criminal defense purposes. See 42 U.S.C. § 14132 (b)(3). There are sanctions for improperly disclosing the information. See 42 U.S.C. § 14135 e (c). DNA records may be expunged from CODIS when a conviction for a qualifying offense is overturned. See 42 U.S.C. § 14132 (d).

The "qualifying offenses" for which DNA collection was required initially included murder, sexual abuse, sexual exploitation or abuse of children, and robbery or burglary. The Justice for All Act of 2004, [6] ("2004 DNA Act") amended 42 U.S.C.§ 14135a to expand the list of qualifying offenses for collection of DNA samples. The statute amended the 2004 DNA Act to require sample collection from any person convicted in federal court of any felony, any offense under chapter 109A of Title 18, any crime of violence, and any attempt or conspiracy to commit any of those offenses. See 42 U.S.C. § 14135a(d).

### B. Procedural Background

Trolinger pleaded guilty to possession with intent to distribute 100 grams or more of marijuana in the form of hashish in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(B) in the United States District Court for the Western District of New York. See United States v. Russell, et al. Criminal Action No. 97-193 (W. D. N.Y). On October 20, 2004, he was sentenced to 87 months imprisonment with participation in the Bureau of Prison's 500 Hour Substance Abuse Treatment Program and five years supervised release. Plaintiff's Ex. A.[7] As a special condition of his supervised release, Trolinger was ordered to enter into a substance abuse program "to include urinalysis and other testing, the details of such treatment to be approved by the United States Probation Office." *Id.* In addition, he was ordered to "submit to a search of his person, property, vehicle, place of residence or any other property under his control and permit confiscation of any evidence or contraband discovered. *See id.*

---

[6]  2004 DNA Act, § 203, Pub. L. No. 108-405, 118 Stat. 2260.

[7]  Petitioner states that he was detained for more than five years, from December 1998 to May 2004, on a multi-count superseding indictment. Complaint, Exhibit 1, ¶ 4.

On or about November 21, 2005, Plaintiff received a letter from the United States Probation and Pretrial Services Office, District of Maryland instructing him to provide a DNA sample on May 23, 2006.  Complaint, Affirmation of Facts,  ¶ 14.   The appointment was rescheduled for June 20, 2006.  See id. at  ¶ 20.   Plaintiff filed this action on June 16, 2006.

## II.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the allegations and facts presented in the light most favorable to Plaintiff and must grant him the benefit of all inferences that can be derived from the alleged facts.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U. S. 69, 73 (1989) (citing Conley, 355 U. S. at 45-46 (1957)).  "[C]omplaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss."  Revene v. Charles County Commissioners, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted).  "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true."  Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990) (citing Jenkins v. McKeithen, 395 U. S. 411 (1969)). The court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See Kowal v. MCI Communications Corp. 16 F 3d 1271, 1276 (D.C. Cir. 1994).

**III. Analysis**

**A**. **Fourth Amendment Claim**

Trolinger claims that the DNA Act, as amended in 2004, violates the Fourth Amendment which protects against unreasonable searches and seizures. He posits that application of the DNA Act to nonviolent felony offenders, absent individualized suspicion, is unconstitutional. Complaint at 6-8.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Constitution, Amendment IV. Compelling a blood sample from a qualified offender without a warrant, probable cause, or individualized suspicion constitutes a search under the Fourth Amendment. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 618 (1989) ("the collection and subsequent analysis of the requisite biological samples must be deemed Fourth Amendment searches"); Schmerber v. California, 384 U.S. 757, 767-68 (1966). The Fourth Amendment "does not, however, proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Mazuz v. Maryland, 442 F.3d 217, 224 (4th Cir. 2006) (citing and quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991); Skinner, 489 U.S. at 619. The reasonableness of the intrusion is a "fact-specific inquiry." Mazuz, 442 F.3d at 225 (citing Ohio v. Robinette, 519 U.S. 33, 39 (1996) (citations omitted).

Federal appeals courts have consistently upheld Fourth Amendment challenges to the

5

collection of DNA samples from convicted felons as reasonable.[8][9]  In <u>Jones v. Murray</u>, 962 F.2d 302, 304 (4th Cir. 1992), the Fourth Circuit upheld constitutionality of a Virginia statute requiring incarcerated felons to provide the state with a blood sample for DNA analysis and storage.[10]  The Fourth Circuit used a balancing test, weighing plaintiff's privacy interests implicated by the search against the public interests promoted by obtaining the sample. <u>See id</u>. The appellate court observed that "when a suspected is arrested upon probable cause, his identification becomes a matter of legitimate state interest and he can hardly claim privacy in it." <u>Id</u>. at 306.  "[T]he Fourth Amendment does not require an additional finding of individualized suspicion before blood can be taken from incarcerated felons for the purpose of identifying them." <u>Id</u>. at 306-07.  Balancing the "minor intrusion" of taking a blood sample against the government interest served "in preserving

---

[8]  <u>See United States v. Conley</u>, 453 F.3d 674 (6th Cir. 2006) (upholding federal DNA Act); <u>United States v. Kraklio</u>, 451 F.3d 922 (8th Cir. 2006) (upholding federal DNA Act); <u>Johnson v. Quander</u>, 440 F.3d 489 (D.C. Cir. 2006) (upholding federal DNA Act); <u>United States v. Catillo-Lagos</u>, 147 Fed. Appx. 71 (11th Cir. 2005) (per curiam); <u>Padgett v.. Donald</u>, 401 F.3d 1273, 1280 (11th Cir. 2005) (upholding Georgia DNA statute); <u>United States v. Sczubelek</u>, 402 F.3d 175, 184 (3rd Cir. 2005) (upholding federal DNA Act); <u>Nicholas v. Goord</u>, 430 F.3d 652, 671 (2d Cir. 2005); <u>United States v. Kincade</u>, 379 F. 3rd 813, 830-32 (9th Cir. 2004) (en banc) (upholding federal DNA Act); <u>Groceman v. United States</u>, 354 F.3d 411, 413-14 (5th Cir. 2004) (upholding federal DNA Act); <u>Green v. Berge</u>, 354 F.3d 675, 677-79 (7th Cir. 2004) (upholding Wisconsin DNA statute); <u>United States v. Kimler</u>, 335 F.3d 1132, 1146 (10th Cir. 2003) (upholding federal DNA Act); <u>Roe v. Marcotte</u>, 193 F. 3d 72 (2d Cir.1999) (upholding Connecticut DNA statute); <u>Jones v. Murray</u>, 962 F.2d 302, 806-08 (4th Cir. 1992) (upholding Virginia DNA statute).

[9]  Further, while it does not appear that this district court has had occasion to consider this question in the context of the DNA Act, as amended in 2004, Judge Blake of this court, upheld the constitutionality of the 2000 DNA Act in <u>United States v. Stegman</u>, 295 F. Supp. 2d 497 (D. Md 2003).  Also, Judge Bennett determined the Maryland DNA collection statute constitutional in <u>Jones v. Chairperson of the Maryland State Parole Commission</u>, 2003 WL 24026312 (D. Md. 2003).

[10]  Trolinger does not allege any facts suggesting that blood testing under the 2004 federal DNA Act is any more intrusive to him or less important to law enforcement officials than it was under the analysis set forth in <u>Jones</u>.

6

a permanent identification record of convicted felons for resolving past and future crimes," the court upheld Virginia's DNA collection statute as reasonable under the Fourth Amendment. See id at 307.

Although Jones was decided in the context of the Virginia DNA collection law, the same Fourth Amendment analysis applies here. See United States v. Stegman, 295 F. Supp. 2d 542, 548-49 (D. Md. 2003) (upholding the 2000 DNA Act under the reasoning in Jones). In Jones, as here, the petitioner argued that the DNA statute was unjustified with respect to testing nonviolent felons. See Jones, 962 F.2d at 308. Notably, the Fourth Circuit rejected this argument, holding that the collection statute was constitutional as applied to violent and nonviolent felony offenders. See id.

Recently, the Supreme Court decided Samson v. California, _ U.S. _ , 126 S. Ct. 2193, 2196 (June 19, 2006), which held that a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment. Samson involved a challenge to California law that required prisoners eligible for release on state parole to agree in writing to "search or seizure by a parole officer or other peace office at any time of the day or night, without a search warrant and with or without a cause. " Cal. Pen code Ann. § 3067(a) (West 2000); Samson, 126 S. Ct. at 2196. The Supreme Court explained that when determining the reasonableness of a search under the Fourth Amendment, the Court examines the totality of the circumstances, balancing the degree to which a search intrudes on an individual's privacy against the degree to which the search is needed to promote legitimate governmental interests. See Samson, 126 S. Ct. at 2197.

The Supreme Court observed that the state's "ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the re-integration of parolees into productive society." Id at 2200. The Court determined that under the

totality of the circumstances, petitioner, as a parolee, "an established variation on imprisonment" (citing Morrissey v. Brewer, 408 U.S. 471, 477 (1972)) "the petitioner did not have an expectation of privacy that society would recognize as legitimate." Id. at 2199. Further there is an "overwhelming interest" in supervising parolees because they are "more likely to commit future criminal offense." Id. at 2200 (quoting Pennsylvania Board of Probation and Parole, 524 U.S. 357, 365 (1998)). The Court noted this rationale also applies to "federal supervised release, which, in contrast to probation, is 'meted out in addition to, not in lieu of, incarceration.'"(quoting United States v. Reyes, 283 F. 3d 466, 461 (2d Cir. 2002)).

In light of the above, the court must consider Trolinger's privacy interests relative to the public interest served by compelling a blood test. First, "the intrusion of the blood test is minimal." See United States v. Sczubelek, 402 F. 3d 175, 176-77 (3d Cir. 2005) (citing Skinner at 489 U.S. at 625). In Jones, the Fourth Circuit observed that the intrusion caused by a blood test is "not significant" (citing Skinner, 489 U.S. at 625). It "' involves virtually no risk, trauma or pain." Jones 962 F. 2d at 307 (quoting Schmerber, 384 U.S. at 771).

While it is true that this "slight intrusion" would be constitutionally impermissible if imposed on an ordinary citizen, "an individual on supervised release has a reduced right to privacy– and in particular to privacy of identity." Sczubelek, 402 F. 3d at 184; see also Kincaide, 379 F. 3d at 834. "[T]he DNA profile derived from the defendant's blood sample establishes only a record of the defendant's identity- otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense." Id. at 837.

On the other hand, the government has a compelling interest in the collection of identifying information of criminal offenders." Sczubelek, 402 F. 3d. at 185. The minimal intrusion of a

8

blood test on Trolinger's diminished expectation of privacy is clearly outweighed by compelling government interests to maintain a record of the identity of convicted felons, deterring recidivism, and ensuring that felons released under supervision do not commit further offenses. For these reasons, and in light of the legal precedent upholding challenges to DNA collection, the Fourth Amendment claim will be dismissed.

**B. Fifth Amendment Claim**

Trolinger asserts that compelling him to provide a DNA sample by taking a blood test impinges on his privilege against self-incrimination, as secured under the Fifth Amendment. The Fifth Amendment privilege against self-incrimination does not extend to the results of compulsory blood tests because such tests are neither testimonial nor communicative. See Schmerber, 384 U.S. at 757, 765; Boling v.Romer, 101 F. 3d 1336, 1340 (10th Cir. 1996). Accordingly, this claim will be dismissed.

**C. Ex Post Facto Claim**

Trolinger argues the broadening of "qualifying offenses" in the 2004 DNA act improperly constitutes a violation of the *Ex Post Facto* clause as applied to him. The *Ex Post Facto* Clause provides: " No State shall pass any.... ex post facto Law. " U.S. Constitution, Art. I, § 10, cl. 1. The prohibition "applies only to penal statutes which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37, 41 (1990). It assures that innocent conduct is not criminalized and that greater punishment is not imposed after the fact. See Weaver v. Graham, 450 U.S. 24, 28 (1981).

It therefore follows that a statute that is not penal cannot be *ex post facto*. Under this analysis, compulsory DNA testing of convicted felons does not implicate the proscription against

9

ex post facto laws.  See Jones, 962 F. 2d at 309; see also Johnson v. Quander, 370 F. Supp. 2d 79, 96-7 (D.D.C. 2005); Ewell v. Murray, 11 F.3d 482, 485 (4th Cir. 1993); Stegman, 295 F. Supp. 2d 542, 547-48 (D. Md. 2003) ) (a potential misdemeanor conviction for failure to cooperate does not increase the punishment for the criminal conviction, but instead criminalizes subsequent failure to comply with the DNA Act.  If plaintiff is convicted of a misdemeanor under 42 U.S.C. § 14135a (a)(5), the conviction would criminalize a new act (or omission) rather than increase punishment for the old act).

The same reasoning applies here.  The penalty for Trolinger's offense has not been increased, and the DNA Act, merely criminalizes plaintiff's failure to comply with the statute. Any resulting punishment would be for the new act or omission rather than represent an increase in his sentence for possession.  Nor does the potential revocation of supervised release increase Trolinger's punishment for a prior conviction.  As part of his sentence, Trolinger was, and remains, subject to mandatory conditions of supervised release. See Stegman, 295 F. Supp. 2d at 547.  The relevant conditions of supervised release issued at sentencing are unchanged. See United States v. Evans, 159 F. 3d 908, 913 (4th Cir. 1998) (stating the term of supervised release, revocation of that term, and any additional imprisonment for violating the terms of release are all part of the original sentence). In sum, since the penalty for Trolinger's prior conviction has not been increased, his *ex post facto* claim is without merit.

**IV.  Conclusion**

For these reasons, the court will grant Defendant's Motion to Dismiss by separate Order. The instant lawsuit is subject to dismissal pursuant to 28 U.S.C. § 1915(e).  As a result, the court

will assign "one strike" under the Prisoner Litigation Reform Act to Trolinger.[11]  An Order consistent with this Memorandum will be separately entered.


                                                                          /s/

  12/19/06                                        _____
Date                                              William M. Nickerson
                                                  United States District Judge

---

[11] 28 U.S.C. § 1915 (g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unlessthe prisoner is under imminent danger of serious physical injury.

As the court interprets this provision (the relevant portions of which are also known as the "Prison Litigation Reform Act" or "PLRA"), once three such dismissals under § 1915(e) or Rule 12(b)(6) of the Federal Rules of Civil Procedure have been accumulated, a prisoner will be barred from initiating further civil actions *in forma pauperis*, absent extraordinary circumstances.